# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMCA-040**

**Filing Date: May 6, 2020**

**No. A-1-CA-36942**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**FRANK C. LITTLE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Released for Publication October 6, 2020.

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
John C. Bennett, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**IVES, Judge.**

**{1}** Defendant appeals his convictions, following a jury trial, for one count of first-degree criminal sexual penetration of a minor under thirteen years of age (first-degree CSPM) in violation of NMSA 1978, Section 30-9-11(C)(1) (2001); three counts of criminal sexual penetration of a minor thirteen to eighteen years of age (second-degree CSPM), comprising two counts in violation of NMSA 1978, Section 30-9-11(D)(1) (2001) and one in violation of Section 30-9-11(E)(1) (2007, amended 2009); and two counts of

criminal sexual contact of a minor (CSCM), in violation of NMSA 1978, Section 30-9-13(B)(2)(a) (2001), against two victims, S.G. and S.P.[1] Defendant first challenges his conviction for first-degree CSPM as charged in Count 1, contending that insufficient evidence supports his conviction on that charge, or, alternatively, that the district court erred both in permitting the State to refresh the recollection of S.G., the victim of that crime, and in denying Defendant the opportunity to conduct recross-examination of S.G. Next, Defendant contends that the indistinguishable nature of his convictions for Counts 2 through 6, which charged second-degree CSPM, violated his constitutional right not to be placed in jeopardy more than once for the same offense. Finally, Defendant contends that error in the jury instructions as to Count 4, CSCM, requires reversal of his conviction on that count. We reverse Defendant's conviction for first-degree CSPM and remand for a new trial. However, we affirm Defendant's three convictions for second-degree CSPM and both of his CSCM convictions.

## DISCUSSION

### I.     We Reverse Defendant's Conviction for First-Degree CSPM

### A.     Summary of Pertinent Testimony

**{2}**     To convict Defendant of first-degree CSPM, the State had to prove beyond a reasonable doubt that Defendant had penetrated S.G. while she was under age thirteen. *See* § 30-9-11(C)(1) (2001) (providing that criminal sexual penetration in the first degree "consists of all sexual penetration perpetrated . . . on a child under thirteen years of age"). At trial, the State possessed a police report that apparently indicated S.G. had told investigators that Defendant had penetrated her when she was twelve.[2] On direct and cross-examination, however, S.G. unequivocally testified—on five occasions—that Defendant had not abused her in this particular manner until after she turned thirteen.[3] The State did not use the report to identify any inconsistency between the report and this testimony when it was given, and S.G. never testified that she did not recall her age at the time Defendant digitally penetrated her for the first time.

---

[1] Because Defendant perpetrated the CSPM at issue over the course of several years, different versions of the CSPM statute governed his various charges. *See generally State v. Lucero*, 2007-NMSC-041, ¶ 14, 142 N.M. 102, 163 P.3d 489 ("[T]he law[] at the time of the commission of the offense[] is controlling." (internal quotation marks and citation omitted)). Where a single count alleged that Defendant's crimes occurred during a time period spanning more than one version of the applicable statute, citations are to the version of the statute in effect at the beginning of that time period.

[2] Neither party provides a record cite to the police report in its briefs, and we have been unable to locate the report in the appellate record.

[3] S.G. testified on direct examination that Defendant began "molesting" her when she was twelve years old. She indicated that, to her, molestation meant touching with the hand, which sometimes included digital penetration. Nevertheless, S.G.'s testimony throughout direct examination made clear that, although Defendant began "molesting" her when she was twelve years old, he did not digitally penetrate her until after she turned thirteen. And S.G. reaffirmed during cross examination that there was no digital penetration at all before she turned thirteen.

**{3}**     The prosecutor began redirect examination on the issue of S.G.'s age by informing S.G. that she was "just going to read a little bit" from the police report and asking S.G. to tell her "whether [it was] true," drawing a hearsay objection from defense counsel. In the ensuing bench conference, the district court indicated that it would permit the State to impeach S.G. with her prior statement to the police and to refresh S.G.'s recollection of that statement by using the police report.[4]

**{4}**     The prosecutor then asked S.G. about her response on cross-examination that she "didn't really quite remember" the basis for all of her trial testimony and "ask[ed her] to read some[thing]" to refresh her recollection:

| | |
|---|---|
| State: | You said that the penetration with the finger did not start until 2004. But isn't that different than what you told the officers? |
| Defense: | Objection. She hasn't said that she needed her recollection refreshed about that issue. |
| Judge: | Sustained. |
| State: | Ok. So, did that refresh your recollection of what you had actually told the officers? |
| Defense: | Objection. |
| Judge: | Overruled. |
| Defense: | She didn't— |
| Judge: | She may ask if it refreshed her recollection. |
| State: | Did [reviewing the police report] refresh your recollection of what you had told the officers about when the penetration started? |
| S.G.: | Yes. |
| State: | And how old were you when it started? |
| S.G.: | Thirteen. |
| Defense: | Objection, she's already testified to that and hadn't said she needed a refresher. |
| Court: | Overruled. |
| State: | Are you sure it was thirteen? |
| S.G.: | Yes. |
| State: | Were you able to read this? |
| | . . . . |
| S.G.: | Some parts. |
| State: | Then—were you too nervous to read it all the way? |
| S.G.: | Yes. |
| State: | Ok. So, would it help to bring it back up to refresh your memory? |
| S.G.: | If I need to, then yes. |
| | . . . . |
| State: | Did that refresh your memory? |
| S.G.: | Yes. |
| State: | About how old you were . . . the first time that he molested you? |
| S.G.: | Yes. |

---

[4]Defense counsel agreed that it would be proper to use the report for impeachment purposes.

> State: And how old were you?
>
> S.G.: Twelve.

Defense counsel objected and moved to strike, arguing that S.G. had "already testified previously" and that her testimony was "coming from the report, not her recollection." The district court excused the jury to address this objection.

{5} Outside the presence of the jury and in the presence of S.G., who remained on the witness stand, the district court explained to the State that its questioning was confusing. The prosecutor informed the court that she wanted to ask S.G. about her statement, made "at the time that this occurred, that she was twelve years old the first time she was penetrated," but the court, apparently misunderstanding the response, disagreed, observing that S.G. had testified that she was thirteen and that the State was trying to "get her to say that she said she was twelve." After the district court walked the State through the questioning it would permit to refresh S.G.'s recollection, the State rehearsed that questioning outside of the presence of the jury at the court's direction:

> State: Ok. All right. You had stated previously that you were thirteen when you were testifying.
>
> S.G.: Yes.
>
> State: And then you said that you weren't quite remembering everything that you had told before.
>
> S.G.: Yes.
>
> State: And did you review something that refreshed your recollection?
>
> S.G.: Yes.
>
> State: And so, did it refresh your recollection?
>
> S.G.: A little.
>
> State: Ok. And so, based on that, how old were you when it started?
>
> S.G. Twelve.

{6} The district court then asked defense counsel to explain her objection. Defense counsel responded that "[her] objection [was] still that [S.G. was] testifying from recollecting the report, [rather than] her recollection of when it happened." The district court replied that defense counsel could make that argument in closing or that it "[could] be the subject of cross-examination," but did not believe it to be "objectionable" because whether "[S.G.] really remember[ed or] just read it from the report" went to the "weight that the jury [could] give the evidence." Defense counsel asked whether, if the prosecutor "proceed[ed] with this matter," she would have an opportunity for recross-examination. The district court denied the request, expressing confusion about its basis because defense counsel "knew about [S.G.'s] statement." Defense counsel reminded the court that it "had just mentioned that [she] could address it on cross-examination," but the court disagreed. It explained that defense counsel had been able to "cross-examine about the issue [of] . . . whether [S.G.] was under thirteen," which it believed had been "adequately touched," and that the prosecutor had not "gone past what's allowed with redirect that would cause [the court] to let [defense counsel] cross again."

**{7}** When the district court brought the jury back into the courtroom, the State resumed its redirect, which proceeded in pertinent part as follows:

> State: Do you remember, around the time that this investigation was going on, telling the officer that you were twelve years old the first time that [Defendant] put his finger inside your vagina?
>
> Defense: Objection. Foundation.
>
> Judge: Overruled.
>
> State: Do you remember saying that?
>
> S.G.: Yes.
>
> State: Ok. So, . . . is that the truth? Were you twelve years old when that started?
>
> S.G.: Yes.
>
> . . . .
>
> State: Ok. So, when we first looked at 2003, you had previously said that there had not been penetration. Do you now remember saying that, in fact, penetration started when you were twelve?
>
> S.G.: Nah.
>
> State: Ok. And that by "molesting" in 2003, it also meant that there was penetration?
>
> S.G.: Excuse me?
>
> State: Do you remember saying to the police that molesting when you were twelve, up here in 2003, also meant penetration?
>
> S.G.: In 2003?
>
> State: With the finger, 'cause you said "molesting" means penetration with the finger….
>
> S.G.: Yes.
>
> State: and touching.
>
> S.G.: Yes.
>
> State: Okay and so did that happen when you were twelve?
>
> S.G.: Yes.

## B. Sufficient Evidence Supports Defendant's Conviction for First-Degree CSPM

**{8}** Defendant first challenges the sufficiency of the evidence to sustain his conviction for first-degree CSPM as to the jury's finding that Defendant penetrated S.G. while she was under thirteen years of age, an essential element of the crime. When reviewing the sufficiency of the evidence, we "scrutin[ize] . . . the evidence and supervis[e] . . . the jury's fact-finding function to ensure that . . . a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (emphasis, internal quotation marks, and citation omitted). "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support

a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Cabezuela*, 2015-NMSC-016, ¶ 14, 350 P.3d 1145 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). We consider even improperly admitted evidence in determining whether substantial evidence supports a defendant's conviction. *See State v. Garcia*, 2019-NMCA-056, ¶ 18, 450 P.3d 418, *cert. denied*, 2019-NMCERT-009 (No. S-1-SC-37766, Sept. 10, 2019). Our review employs a two-step process in which we first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We then consider "whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076.

**{9}** Here, sufficient evidence supports the jury's finding that Defendant penetrated S.G. while she was under thirteen because S.G. testified to that effect during redirect examination. After being presented with the police report, S.G. testified that it had refreshed her recollection and that she had been twelve when the penetration began.[5] She then testified that she had been telling the truth when she told the police the same thing. This testimony was substantial evidence of the age element of Defendant's first-degree CSPM charge. Although it contradicted S.G.'s testimony on direct and cross-examination, that inconsistency provides us with no basis to reverse on sufficiency grounds because "it is the exclusive province of the jury to resolve the factual inconsistencies in [a witness's] testimony." *State v. Sena*, 2008-NMSC-053, ¶ 11, 144 N.M. 821, 192 P.3d 1198 (alterations, internal quotation marks, and citation omitted).

**{10}** Defendant contends that we cannot consider S.G.'s redirect testimony regarding her age in our sufficiency analysis because the district court admitted it for the sole purpose of impeaching her previous testimony that Defendant had not penetrated her until after she turned thirteen. We disagree. The State asked S.G. whether her statement to the police was true in order to prove that Defendant had penetrated S.G. while she was twelve, rather than to prove "the fact of the inconsistency," *State v. Macias*, 2009-NMSC-028, ¶ 20, 146 N.M. 378, 210 P.3d 804, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110, between the statement and S.G.'s trial testimony. And the district court did not instruct the jury that it could not consider S.G.'s redirect testimony for the purpose of determining whether Defendant had penetrated S.G. while she was under thirteen years old. We conclude that sufficient evidence supports Defendant's conviction for first-degree CSPM.

---

[5] While the State imprecisely asked S.G. whether the police report had "refresh[ed her] memory . . . [a]bout how old [she was] the first time [Defendant] had *molested* [her,]" *see supra* note 2, this question immediately followed a prior line of questioning regarding S.G.'s age when Defendant first perpetrated CSPM against her. This context makes clear that the State was asking S.G. whether the report refreshed her memory of her age when the penetration began.

**C. The Process Used to Refresh S.G.'s Recollection Constituted Reversible Error**

**{11}** Defendant next contends that the district court committed reversible error in the manner in which it permitted the State to refresh S.G.'s recollection on the issue of her age. "We review the district court's evidentiary rulings for an abuse of discretion." *State v. Garnenez*, 2015-NMCA-022, ¶ 29, 344 P.3d 1054. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted). If we find an abuse of discretion in a non-constitutional evidentiary ruling, the error is grounds for reversal if "there is [a] reasonable probability [it] affected the verdict." *Tollardo*, 2012-NMSC-008, ¶ 36 (emphasis, internal quotation marks, and citation omitted).

**{12}** "[W]itnesses are expected to testify in their own words," but there are times when a failure of memory warrants the use of an exhibit to refresh recollection. *Macias*, 2009-NMSC-028, ¶ 23; *see* Rule 11-612 NMRA. "In order to refresh a witness's recollection with an exhibit, the attorney must first establish that the witness does not recall the matter." *Macias*, 2009-NMSC-028, ¶ 23. Stated differently, "[n]o means of arousing recollection may be used until the witness has satisfied the district judge that he [or she] lacks effective present recollection." *State v. Bazan*, 1977-NMCA-011, ¶ 17, 90 N.M. 209, 561 P.2d 482 (internal quotation marks and citation omitted); *see also State v. Orona*, 1979-NMSC-011, ¶ 23, 92 N.M. 450, 589 P.2d 1041 ("The witness's memory on the subject must be exhausted."). Having established a lack of recollection, counsel must demonstrate that the exhibit will help the witness remember. *Macias*, 2009-NMSC-028, ¶ 24. If the exhibit has refreshed the witness's memory, the witness may provide independent testimony. *See id.* ¶ 25 ("After the witness has considered the exhibit, the attorney must then ask the witness whether his or her memory has been refreshed. If the answer is yes, the exhibit is removed from the witness and the witness continues with his or her testimony."); *see also Bazan*, 1977-NMCA-011, ¶ 17 ("[T]he district court judge has considerable discretion . . . to reject the testimony . . . by [ruling] . . . that the writing does not refresh [the witness's] memory[.]" (internal quotation marks and citation omitted)). "The testimony must come from the witness's restored memory, not from the exhibit, and certainly not from the questioning attorney." *Macias*, 2009-NMSC-028, ¶ 25. Ultimately, "the refreshing of recollection must be conducted . . . to prevent inadmissible evidence from being suggested to the jury by any means[.]" *Id.* (internal quotation marks and citation omitted); *see also* Rule 11-103(D) NMRA ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means.").

**{13}** We conclude that the district court abused its discretion in denying Defendant's motions to strike S.G.'s one-word affirmation that the report had "refresh[ed her] memory . . . [a]bout how old" she had been and subsequent testimony that she had been twelve. The police report's account of S.G.'s prior statement constituted hearsay if offered to prove that S.G. had made the statement, and hearsay within hearsay, if offered to prove that Defendant committed CSPM against S.G. before she turned

thirteen. *See* Rule 11-801(C)(2) NMRA (defining hearsay, in relevant part, as a statement that "a party offers in evidence to prove the truth of the matter asserted in the statement"). Admitting S.G.'s "refreshed" testimony regarding her age was error because the State failed to make any showing that the police report would be "the key to refreshing [S.G.'s] independent recollection[,]" rather than "a source of direct testimony." *United States v. Weller*, 238 F.3d 1215, 1221 (10th Cir. 2001). S.G. had not given any indication that her memory was failing on this critical topic.[6] Nor had S.G. demonstrated "uncertain[ty or] hesitan[cy]," *Orona*, 1979-NMSC-011, ¶ 24, in her testimony regarding the issue. And S.G. never testified that seeing the police report would aid her memory before it was handed to her. The State's belief that the prior statements described in the police report were correct was no basis for permitting it to use the report to refresh S.G.'s contrary memory.

**{14}** The district court compounded this error by overruling Defendant's objection that S.G. was "testifying from recollecting the report," rather than her recollection of when the CSPM happened. Because a witness's refreshed *present* recollection is an indispensable foundational requirement for the use of refreshed testimony, *see Macias*, 2009-NMSC-028, ¶ 25, it was an abuse of discretion for the district court to conclude that S.G.'s potential lack of an independent recollection was not "objectionable." *See Harrison v. Bd. of Regents of Univ. of N.M.*, 2013-NMCA-105, ¶ 14, 311 P.3d 1236 ("[W]e may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." (internal quotation marks and citation omitted)). Although S.G. testified that the report refreshed her memory of both her statement to the police and her age, the court's misunderstanding of the law deprives us of any basis on which to conclude that was indeed the case. And we think that a sound exercise of discretion would have entailed more than a cursory inquiry into the extent of S.G.'s memory given the absence of any prior indication that S.G.'s memory was failing, the State's repeated attempts to refresh her recollection, and the evident connection between S.G.'s recollection of her prior statement and her sudden change in testimony. *See generally Orona*, 1979-NMSC-011, ¶ 26 ("[I]f a party can offer a previously given statement to substitute for a witness's testimony under the guise of 'refreshing recollection,' the whole adversary system of trial must be revised." (internal quotation marks and citation omitted)).

---

[6]At trial, the State justified its attempts to refresh S.G.'s recollection by asserting that S.G. had told defense counsel that "she didn't quite remember" the factual basis for her testimony. The record of S.G.'s prior testimony belies that assertion. Throughout S.G.'s testimony on direct examination, the State and S.G. had referenced a calendar—admitted into evidence for all purposes as an exhibit in a ruling not challenged on appeal—that S.G. had created in 2010 to document Defendant's abuse. On cross-examination, defense counsel attempted to undermine S.G.'s credibility by eliciting her testimony that, although she had remembered the events at issue "pretty well" at the time she created the calendar, she no longer did at the time of trial. S.G. then testified that what she was saying at trial was "based on the calendar[,]" rather than based on what she personally remembered. But S.G. did not testify or indicate that her general lack of recall extended to the subject of her age when Defendant first penetrated her. And S.G.'s adamant denial of being penetrated before she turned thirteen could not have been "based on the calendar," which indicated only that she had been "molested" in 2003. *See supra* note 2.

**{15}** Particularly considered together, these errors were not harmless. The only evidence of an essential element of first-degree CSPM was S.G.'s erroneously refreshed testimony that she had been twelve and her subsequent testimony that her statement to the police, as described in the police report, was true. Because the district court failed to determine whether S.G.'s erroneously refreshed testimony was based on S.G.'s independent recollection, we cannot ascertain whether this subsequent testimony was based on anything other than the report. As such, there is more than a reasonable probability that the erroneous process used to refresh S.G.'s recollection affected the verdict. *See State v. Branch*, 2010-NMSC-042, ¶ 15, 148 N.M. 601, 241 P.3d 602 ("A non-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict." (alteration, internal quotation marks, and citation omitted)), *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6. We must therefore reverse Defendant's conviction for first-degree CSPM.

## D.  The Denial of Defendant's Request for Recross-Examination Constituted Fundamental Error

**{16}** In his final challenge to his conviction on Count 1, Defendant asserts that we should reverse because the district court prohibited him from challenging S.G.'s redirect testimony through recross-examination. Concerned about the constitutional implications of Defendant's argument, we asked the parties to file briefs addressing the propriety of the district court's restriction on cross-examination under the Confrontation Clause. *See generally* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"); *State v. Lopez*, 1996-NMCA-101, ¶ 14, 122 N.M. 459, 926 P.2d 784 ("The right to cross-examination is viewed as the most important element of the right of confrontation."); *see also State v. Vargas*, 2017-NMSC-029, ¶¶ 13-15, 404 P.3d 416 (holding that this Court had not abused its discretion in reaching an unpreserved Fourth Amendment issue sua sponte). We now conclude that the district court erred because S.G.'s testimony on redirect marked the first occasion at trial on which she indicated that Defendant had perpetrated CSPM against her before she turned twelve, a fact that was an essential element of the first-degree CSPM offense with which Defendant was charged. And, because S.G.'s redirect testimony was the only evidence of that essential element introduced at trial, we conclude that the district court's ruling constituted fundamental error requiring reversal. We therefore hold that the district court violated Defendant's confrontation rights in prohibiting recross-examination and that this ruling constituted fundamental error requiring reversal.

**{17}** We have long recognized that a criminal defendant has a Confrontation Clause right to recross-examination on "new matter[s] . . . brought out on redirect examination." *State v. Vigil*, 1977-NMCA-119, ¶ 3, 91 N.M. 156, 571 P.2d 423 (citing *United States v. Morris*, 485 F.2d 1385 (5th Cir. 1973)); *accord United States v. Riggi*, 951 F.2d 1368, 1375 (3d Cir. 1991) ("When material new matters are brought out on redirect examination, the Confrontation Clause of the Sixth Amendment mandates that the opposing party be given the right of recross-examination on those new matters."). When new matter is elicited on redirect, a trial court has no discretion to deny recross because

"the discretionary authority to limit cross-examination comes into play only after there has been permitted as a matter of right sufficient cross-examination to satisfy the [Confrontation Clause,]" *United States v. Tolliver*, 665 F.2d 1005, 1008 (11th Cir. 1982) (internal quotation marks and citation omitted), and "[t]o deny recross[-]examination on matter first drawn out on redirect is to deny the defendant the right of *any* cross-examination as to that new matter." *United States v. Caudle*, 606 F.2d 451, 458 (4th Cir. 1979) (emphasis added); *see also United States v. Jorgenson*, 451 F.2d 516, 520 (10th Cir. 1971); *cf. Empire W. Cos. v. Albuquerque Testing Labs., Inc.*, 1990-NMSC-096, ¶ 8, 110 N.M. 790, 800 P.2d 725 ("Only after the right to cross-examination has been substantially exercised does the right to further examination become discretionary."). Without implying the existence of a "bright line rule delineating what constitutes 'new matter,' " we agree with the United States Court of Appeals for the Fourth Circuit that redirect testimony raises new matter not only when "it encompasses a subject outside of the scope of direct examination," but also when "a witness offers materially different testimony regarding a subject first introduced on direct." *United States v. Blankenship*, 846 F.3d 663, 669 (4th Cir. 2017).

**{18}** S.G.'s changed testimony on redirect examination as to her age was "materially different" than her prior testimony on that subject. On direct and cross-examination, S.G. had repeatedly and unequivocally testified that Defendant had not penetrated her before she turned thirteen. This testimony provided the jury with no basis for finding that Defendant had committed first-degree CSPM; to the contrary, it was powerful evidence that Defendant had *not* committed that crime. It was not until her redirect testimony that S.G. provided incriminating evidence on the essential age element by testifying—for the first time—that penetration had occurred while she was twelve. Her redirect testimony on the issue was consequently new matter, and Defendant had a right under the Confrontation Clause to recross-examine S.G. as to her age when Defendant first penetrated her.

**{19}** The district court erred in concluding that Defendant was afforded an adequate opportunity for cross-examination because he had been able to cross-examine "about the issue [of] . . . whether [S.G.] was under thirteen" while "kn[owing] about the statement" that ultimately prompted S.G. to change her testimony. The court's ruling applied an unduly restrictive definition of "new matter." *See United States v. Baker*, 10 F.3d 1374, 1405 (9th Cir. 1993) (amended, Dec. 13, 1993) (concluding that the district court had "applied an overly narrow definition of 'new matter' " in "interpret[ing] the standard to preclude recross if . . . questions fell within an 'area' or 'subject matter' for which cross-examination had previously been available"), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir. 2000). Defendant had no opportunity to challenge S.G.'s completely new redirect testimony that penetration had occurred while she was twelve. Before and throughout cross-examination, there was no reason for defense counsel to challenge S.G.'s testimony regarding her age. Had the testimony remained the same, it would not have supported a guilty verdict on the charge of first-degree CSPM, and the district court would have been required to direct a not guilty verdict. Even had defense counsel believed, as the prosecutor did, that S.G. was experiencing a lapse in memory, defense counsel was not required to seek

incriminating testimony on the issue during cross-examination in hopes that she would be able to discredit it. But that was the only opportunity for cross-examination that the district court afforded Defendant. Under our adversarial system of criminal justice, Defendant's right to challenge the State's case did not depend on whether he made the State's case for it.

**{20}** Although we have identified error under the Confrontation Clause, Defendant at trial argued neither that the denial of recross violated his constitutional rights generally nor, in what would have been the "more desirable approach," that it violated his rights under the Confrontation Clause. *State v. Silva*, 2008-NMSC-051, ¶ 10, 144 N.M. 815, 192 P.3d 1192 (holding that claimed Confrontation Clause error in the denial of a request for cross-examination about a specific issue is reviewed for fundamental error when a defendant does not alert the district court to a constitutional basis for the request), *unrelated holding clarified by State v. Guerra*, 2012-NMSC-027, ¶ 15, 284 P.3d 1076. We therefore review this issue only for fundamental error. *Id.* ¶ 11. Where a defendant's guilt is not "so questionable that upholding a conviction would shock the conscience," we will not reverse for fundamental error unless, "notwithstanding the apparent culpability of the defendant, substantial justice has not been served" because "a fundamental unfairness within the system has undermined judicial integrity." *Id.* ¶ 13 (internal quotation marks and citation omitted); *see also State v. Barber*, 2004-NMSC-019, ¶ 18, 135 N.M. 621, 92 P.3d 633.

**{21}** We hold that such fundamental unfairness occurred in this case. Had Defendant succeeded in discrediting S.G.'s redirect testimony in the eyes of the jury, he would have been acquitted of first-degree CSPM. *Cf. Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) ("The correct inquiry is whether, *assuming that the damaging potential of the cross-examination were fully realized*, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." (emphasis added)). The district court's ruling "entirely vitiated," *Silva*, 2008-NMSC-051, ¶ 15, Defendant's right to cross examine S.G. regarding the only evidence sufficient to prove an essential element of that crime. We therefore conclude that this error independently requires reversal of Defendant's conviction.

## II. Defendant's Convictions for Counts 2 through 6 Do Not Violate Double Jeopardy

**{22}** We next address Defendant's contention that he has been subjected to double jeopardy by multiple convictions for one course of conduct of CSPM and CSCM per victim in his convictions for Counts 2 through 6. The jury found Defendant guilty of Counts 2 through 4 based on the abuse he perpetrated against S.G.: Count 2 was based on CSPM committed between September 20, 2003, and February 28, 2005; Count 3 on CSPM committed between March 1, 2005 and December 30, 2006; and Count 4 on CSCM committed between January 1, 2007, and May 31, 2010. Defendant's convictions for Counts 5 and 6 are based on his abuse of S.P.: Count 5 was based on CSPM committed between August 8, 2008, and April 30, 2010, and Count 6 on CSCM committed between May 1, 2010, and May 31, 2010.

**{23}** Defendant claims that we must reverse his convictions for all but one count of CSPM or, alternatively, one count of CSPM and one count of CSCM per victim because where "continuous and random contact (and here, penetration) . . . [is] said to have occurred over a lengthy period of time, but not at specific times[,]" it would violate double jeopardy to allow for multiple convictions to stand. Reviewing this issue de novo, *State v. Lente*, 2019-NMSC-020, ¶ 14, 453 P.3d 416, we disagree. The charges here were adequately differentiated to avoid the double jeopardy concerns raised by Defendant. *See id.* ¶¶ 47-49 (explaining that double jeopardy concerns related to "carbon copy" charges are eliminated where the charges are distinct in time period and conduct). The charges pertaining to each victim were separated into specific and distinct time periods and alleged distinct acts. The State did not allege that Defendant had perpetrated any specific sex act more than once in any given time period. This differentiation was borne out in the instructions the jury received at trial. The jury instructions for Counts 2, 3, and 4 required the jury to find that Defendant had engaged in three different sexual acts with S.G. during specific, consecutive time periods. The jury instructions for Counts 5 and 6 likewise asked the jury to find that Defendant had engaged in two different sexual acts with a second victim, S.P., during specific, consecutive time periods. The testimony elicited at trial fit within that framework and was sufficient to ensure that Defendant was not subjected to multiple punishments for the same offense: each victim testified and differentiated Defendant's crimes by time period. *See id.* ¶ 52 ("Our primary concern in t[he] context [of double jeopardy] is to ensure that sufficient evidence exists to establish that each penetration is distinct from the others." (internal quotation marks and citation omitted, alteration incorporated)). Where, as here, the identical actions are adequately separated, a defendant's convictions withstand a double jeopardy challenge. *See id.* ¶ 30 ("There can be no question that our Legislature . . . intend[ed] for different acts of criminal sexual penetration and contact perpetrated against a child on different and discrete dates over a course of years to constitute discrete violations of the statutes here implicated."). As such, Defendant's convictions for Counts 2 through 6 did not violate double jeopardy.

### III. The Jury Instruction for Count 4 Was Not Fundamentally Erroneous

**{24}** Defendant argues that the jury instruction for Count 4 was fundamentally erroneous because it described a time frame that extended beyond S.G.'s eighteenth birthday, and we therefore have no way of knowing whether Defendant was convicted of CSCM based on conduct that occurred when S.G. was no longer a minor. We are not persuaded because the same instruction Defendant complains of also required the jury to find that S.G. "was at least thirteen (13) but less than eighteen (18) years old." Accordingly, the jury instructions only allowed the jury to find Defendant guilty for conduct that occurred before S.G. turned eighteen. It follows that the instruction for Count 4 would not have confused or misdirected a reasonable juror. *See Barber*, 2004-NMSC-019, ¶ 19 (explaining that there is no reversible error, and thus no fundamental error, when a reasonable juror would not have been confused or misdirected by the jury instructions provided). The instruction did not result in fundamental error. *See Cunningham*, 2000-NMSC-009, ¶ 21 (holding that fundamental error does not occur

where the jury instructions as a whole provide all of the essential elements of an offense).

**CONCLUSION**

**{25}**    We reverse Defendant's conviction for first-degree CSPM and remand for a new trial on that charge. We affirm Defendant's remaining convictions.

**{26}    IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**