This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-40525**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**LATOYA GUTIERREZ,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Wadsworth Law, LLC
Mathew R. Wadsworth
Rio Rancho, NM

for Appellant

**MEMORANDUM OPINION**

**YOHALEM, Judge.**

**{1}** Defendant Latoya Gutierrez was accused of forging five checks and was charged with twelve distinct crimes as a result: three counts of identity theft (Counts 1-3), five counts of forgery (Counts 4-8), one count of conspiracy to commit identity theft (Count 9), and three misdemeanor counts of fraud (Counts 10-12). At trial, Defendant was convicted of ten of the twelve counts, the State having withdrawn one identity-theft charge and one fraud charge. After one-year habitual enhancements were added to

several of the charges, and with some of the sentences running concurrently, Defendant was sentenced to fifteen years, or three years for each forged check. Four of the five forgery charges related to checks were purportedly written by Mike Archibeque, the owner of Billy Johnston Auctioneers (Auctioneers). The State presented no direct evidence from Mr. Archibeque, or from any representative of Auctioneers, in support of these charges. Nor did the State present the forgery and counterfeit check affidavit that Mr. Archibeque apparently signed at his bank's behest. Instead, the State introduced testimony from a bank employee who stated that she had seen Mr. Archibeque's forgery and counterfeit check affidavit and that it indicated that the checks were counterfeit and attested that Mr. Archibeque had not signed or authorized them. This testimony was crucial to prove an element of each of the charges involving the Auctioneers checks. The affidavit that provided the basis for the testimony was testimonial in nature. Therefore, admission of the bank employee's testimony, without an opportunity to cross-examine Mr. Archibeque, the witness with direct knowledge, violated Defendant's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Although defense counsel did not object to the admission of the testimony at trial, we hold that the violation of the Confrontation Clause in admitting this evidence was fundamental error. We therefore reverse, and remand for retrial those of Defendant's convictions that relied on Mr. Archibeque's out-of-court statements. As to the remaining forgery conviction concerning an SSI Services check, we hold the State presented insufficient evidence to support that conviction and reverse it outright. Defendant does not challenge one of the identity-theft convictions on appeal, and we therefore affirm that conviction.

**BACKGROUND**

**{2}** The events in question occurred over a one-month period in the fall of 2019. Defendant was accused of passing or attempting to pass five different checks, at various locations, including an Albertsons grocery store, a bank, and via mobile banking. The alleged victims included an individual named Ashley Caron, whose driver's license was stolen and whose endorsement signature was forged on an Auctioneers check made payable to Ms. Caron, Mike Archibeque, the owner of Auctioneers, and SSI Services, LLC, a business that was the subject of one instance of alleged false-check writing. As a result, Defendant was charged with the following: (1) three counts of identity theft, for misappropriating the identities of Ms. Caron, Auctioneers, and SSI Services; (2) four counts of forgery related to checks purportedly written or authorized by Mr. Archibeque; (3) one count of forgery for the one check purportedly written or authorized by SSI Services; (4) one count of conspiracy, for conspiring with a second person to commit identity theft; and (5) three counts of fraud, for allegedly defrauding Albertsons, the Bank of Clovis, and PenFed Credit Union by cashing or depositing forged checks at these locations.

**{3}** At trial the State dismissed both the identity-theft charge concerning SSI Services and the fraud charge related to PenFed Credit Union. Defendant was convicted of the remaining ten charges. Additional facts will be discussed as needed in subsequent sections of this opinion.

## DISCUSSION

### I.      Indictment Count 1

**{4}**     Count 1 charged Defendant with identity theft with respect to Ms. Caron. Defendant does not challenge her conviction under this count, and we therefore affirm the conviction and the sentence imposed by the district court as to that count.

### II.     Indictment Counts 2, 4, 5, 6, 8, 9, 10, and 11: Confrontation Clause Violations

**{5}**     The remaining counts include the identity-theft charge related to Auctioneers; the four forgery charges arising out of checks purportedly printed and written, or authorized by Mr. Archibeque, the owner of Auctioneers; the conspiracy to commit identity theft charge; and the fraud charges based on the passing of Auctioneers checks to Albertsons and the Bank of Clovis. Thus, all of these charges relate, at least in part, to the Auctioneers checks.

**{6}**     With respect to the charges that were premised on the Auctioneers checks, the State presented the following evidence at trial. Linda Davis, a management-level employee of James Polk Stone Community Bank (JP Stone), was called as a witness. She testified that she is familiar with the check forms generally used by Auctioneers, as Auctioneers banks with JP Stone. She pointed out discrepancies in the format and content of the alleged counterfeit checks, including the fact that "Auctioneers" was spelled "Suctioneers." She then testified in answer to questioning by the State on direct examination that Mr. Archibeque had come to her bank and filled out what she termed a forgery and counterfeit check affidavit, indicating both that the checks were counterfeit and that Mr. Archibeque had not signed or authorized them. The State elicited this testimony without attempting to introduce the affidavit itself into evidence at trial, likely recognizing that it was inadmissible. Thus, the only explicit evidence introduced at trial to the effect that the checks were counterfeit, and that Mr. Archibeque had neither signed nor authorized the checks, was Ms. Davis's second-hand testimony that she had read the forgery and counterfeit check affidavit, and her account of the contents of that affidavit based on having read it. Inexplicably, defense counsel did not object to the introduction of this testimony at trial.

**{7}**     On cross-examination, Ms. Davis admitted that it was not unusual for businesses these days to print some checks directly off their computers on forms purchased at stationery stores, like the form used for the allegedly counterfeit checks. She did not know if Auctioneers did this for some of their payments by check.

**{8}**     On appeal, Defendant challenges the admission of the testimony as either fundamental error under the Confrontation Clause, or plain error in admitting double hearsay testimony. She also maintains her trial counsel was ineffective for failing to object to the affidavit testimony. We review the Confrontation Clause question first. Because it is dispositive, we do not reach the related double hearsay objection or the

claim of ineffective assistance of counsel. *State v. Mascareñas*, 2000-NMSC-017, ¶ 1, 129 N.M. 230, 4 P.3d 1221 (declining to reach other issues brought before the Court when the first issue supports reversal and remand).

**{9}** Where no objection has been made at trial to the introduction of evidence claimed on appeal to violate the Confrontation Clause, we review for fundamental error. *See, e.g.*, *State v. Little*, 2020-NMCA-040, ¶ 20, 473 P.3d 1. Review for fundamental error is a two-step process; first, we determine whether error occurred and then we determine whether the error was fundamental. *State v. Ocon*, 2021-NMCA-032, ¶¶ 7-8, 493 P.3d 448. In this case, if we find that the admission of the evidence at issue was in error because it violated the Confrontation Clause, we then continue our analysis to determine whether the error so undermined the reliability of the conviction or prejudiced the defendant's rights that it would "shock the conscience" to allow the conviction to stand. *State v. Barber*, 2004-NMSC-019, ¶ 14, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted). "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *Id.* ¶ 8. We will not uphold a conviction "if an error implicated a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Id.* ¶ 18 (internal quotation marks and citation omitted). Applying this test, we address first whether it was error to allow Ms. Davis to testify about the contents of the Archibeque affidavit.

**{10}** We conclude that the admission of Ms. Davis's testimony about the contents of the affidavit was error. A defendant's right to confront the witnesses brought against them is a bedrock constitutional right. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against [them]"). Admission of evidence of an out-of-court statement that is testimonial in nature violates this right, because it deprives a defendant of all opportunity to cross-examine the declarant concerning the statement. *See State v. Carmona*, 2016-NMCA-050, ¶¶ 15-16, 371 P.3d 1056. Here, the evidence plainly shows that this was a testimonial affidavit prepared for the purpose of presenting evidence to the police for use in the criminal investigation of Defendant and for her subsequent criminal trial. An affidavit that narrates past events and is directed toward establishing facts for the purpose of proving a defendant's guilt is a classic example of a constitutionally impermissible out-of-court testimonial statement. *See Davis v. Washington*, 547 U.S. 813, 822 (2006) (holding that a statement is testimonial when its primary purpose is "to establish or prove past events potentially relevant to later criminal prosecution"). Ms. Davis's hearsay testimony describing the contents of the Archibeque affidavit did not even allow Defendant's counsel to scrutinize and cross-examine on the affidavit itself, let alone cross-examine the declarant, Mr. Archibeque. There can be no question that Ms. Davis's testimony violated Defendant's rights under the Confrontation Clause.

**{11}** The next issue we must determine is whether the erroneous admission of a testimonial statement, which violated the Confrontation Clause, constituted fundamental error. The procedure employed here deprived Defendant of the opportunity to cross-examine Mr. Archibeque concerning a crucial part of the State's case: whether Mr. Archibeque's business had printed the checks and whether he had signed them and, if

not, whether their preparation and endorsement was authorized by Auctioneers. *See State v. Candelaria*, 2019-NMCA-032, ¶ 11, 446 P.3d 1205 (pointing out that signing someone else's name to a check with authorization to do so is not forgery). Proof that neither the preparation of the checks nor the signature was authorized is an essential element of each of the eight counts of stolen identity, fraud, conspiracy, and forgery charged based on the purported Auctioneers checks. *See id.* "The right to cross-examination is viewed as the most important element of the right of confrontation." *State v. Lopez*, 1996-NMCA-101, ¶ 14, 122 N.M. 459, 926 P.2d 784. It is recognized as "critical to insure the integrity of the fact-finding process." *Id.* (internal quotation marks and citation omitted). In *Little*, 2020-NMCA-040, ¶¶ 16-21, this Court held that denial of the right to cross-examine a witness's testimony that was relied on by the state to establish an element of the crime charged so impugned the integrity of the criminal process that reversal for fundamental error was required.

**{12}** The record here shows that the testimony concerning the affidavit was the only evidence concerning whether the printing of the checks and the signature of Mr. Archibeque on the checks was authorized by Auctioneers. We do not agree with the State that the testimony of Ms. Davis concerning the general appearance of the Auctioneers checks, the comparison of the signature of Mr. Archibeque to the signature on the allegedly forged checks, or the return of the check by the clearing house as unable to be paid, conclusively established that the checks were not authorized by Auctioneers. Without Ms. Davis's testimony concerning the contents of the affidavit, the defense had succeeded in sowing doubt about whether the checks had been printed by the business and authorized by Mr. Archibeque. The evidence without the affidavit testimony was sufficient to convict Defendant of forgery. Nonetheless, we conclude that the constitutional error in this case bore directly upon, and may well have convinced the jury to convict Defendant of the eight criminal counts related to the Auctioneers checks. Allowing these convictions to stand when Defendant had no opportunity to confront and cross-examine Mr. Archibeque, the key witness, would undermine the integrity of the judicial system. We therefore conclude there was fundamental error requiring reversal and retrial on these counts. *See id.* ¶ 21.

**{13}** The State also argues specifically against Defendant's claim of fundamental error with respect to Count 6 of the indictment. The basis for this count was an Auctioneers check made payable to Ashley Caron, which purportedly was endorsed by her prior to being cashed. The State contends that the jury could have convicted Defendant of Count 6 based, not on the counterfeiting and forgery of the Auctioneers check, but based on forgery of Ms. Caron's signature endorsing the check, one of the alternative bases for conviction of forgery included in the Count 6 jury instruction. In order to convict on this charge the jury was instructed that they needed to find that Defendant "gave or delivered to Albertsons a check knowing it to be a false writing OR contain a false signature OR endorsement OR be changed [to have a different effect from the original]."

**{14}** We do not agree with the State that the confrontation clause violation did not sufficiently affect Defendant's conviction on Count 6 so that the questions about the

integrity of the judicial process discussed above do not taint this conviction as well. It is impossible to know whether the jury's conviction was founded exclusively on the forged Caron endorsement. It appears unlikely that it was. As the United States Supreme Court has noted, "[j]urors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law." *Griffin v. United States*, 502 U.S. 46, 59 (1991). Because we cannot determine whether the jury relied on evidence that violated Defendant's constitutional right to confrontation to find that the check was counterfeit or the signature forged, we conclude that the legal error in the admission of the affidavit evidence sufficiently impugns the integrity of Defendant's conviction on Count 6 that fundamental error requires its reversal as well. Because "the conviction must be set aside lest the verdict rest on an unconstitutional basis," we reverse. *United States v. Bucey*, 876 F.2d 1297, 1312 n.27 (7th Cir. 1989) (internal quotation marks and citation omitted).

**{15}**    We note that the same rule does not apply where the ground for reversal is the insufficiency of the evidence to support one of the alternative bases for conviction. *See State v. Olguin*, 1995-NMSC-077, ¶ 2, 120 N.M. 740, 906 P.2d 731 (holding that due process does not require a general verdict of guilt to be set aside if one of the two alternative bases for conviction is supported by sufficient evidence and the other basis is challenged only because it is factually inadequate). We agree with the State that the alternative of a forged endorsement is supported by sufficient evidence, as are the alternatives of a counterfeit check or a false signature. Therefore, there is no double jeopardy bar to remanding for a new trial. *See State v. Cabezuela,* 2011-NMSC-041, ¶ 47, 150 N.M. 654, 265 P.3d 705 ("Because we find that there was sufficient evidence to convict [the d]efendant, . . . retrial is not barred by double jeopardy implications."). We, therefore, reverse Defendant's conviction of Count 6 and remand for retrial.

### III.    Indictment Count 7: Sufficiency of the Evidence

**{16}**    Defendant argues that the State presented no evidence that the SSI Services check, which was the basis of Count 7 of the indictment, was forged. Defendant asks that we dismiss this count outright for lack of sufficient evidence. We agree that the State presented no evidence to support Defendant's conviction of Count 7, and therefore, dismissal of this count is required.

**{17}**    Count 7 was not based on an Auctioneers check, but was instead based on a check purportedly issued by a company called SSI Services, LLC. With respect to this check, the State presented very little evidence and no evidence at all from any representative of SSI Services. The State's entire case is based on the testimony of Tammy Little, an employee of the Bank of Clovis. Ms. Little testified that Defendant opened an account at the bank by depositing a $490 Auctioneers check. Count 7, however, does not concern this check. It concerns solely a check from SSI Services, which Defendant later attempted to deposit in the account she had opened at the bank utilizing the mobile banking service offered to account holders. Count 7 alleges that this SSI Services check was forged by Defendant.

**{18}** The sole evidence introduced at trial of forgery of this check was Ms. Little's testimony verifying this check did not clear and was "returned back to us." Ms. Little claimed that simply based on the return by the clearinghouse of the SSI Services check, she knew the check was "fraudulent." Ms. Little's conclusory assertion that the SSI Services check was "fraudulent" is insufficient to support a conviction for forgery. The only fact in her testimony, as opposed to a statement of opinion, was the fact that the check was returned. As Defendant argues, there could have been a number of reasons for the return of the check other than forgery; for example, the check could have been returned due to insufficiency of funds in SSI Services' account. Furthermore, the return of the check alone says nothing about whether SSI Services might have authorized the issuance of the check, which would preclude a conviction for forgery. *See Candelaria*, 2019-NMCA-032, ¶ 11 (stating that signing someone else's name to a check with authorization to do so is not forgery). We therefore disagree with the State's argument that the jury could have inferred the necessary elements of forgery beyond a reasonable doubt from Ms. Little's mere assertion, lacking any factual basis, that the check was "fraudulent." We conclude that Defendant's conviction of Count 7 must be reversed for lack of sufficient evidence to support the conviction.

**{19}** Where a conviction is overturned because the evidence is insufficient, the reversal is treated as an acquittal for double jeopardy purposes and retrial is precluded. *State v. Gonzales*, 2013-NMSC-016, ¶ 17, 301 P.3d 380.

**CONCLUSION**

**{20}** Based on the foregoing, we affirm Defendant's conviction on Count 1 of the indictment. We reverse the convictions on Counts 2, 4, 5, 6, 8, 9, 10, and 11, and remand for retrial of those charges. Finally, we reverse the conviction on Count 7 and remand for dismissal of that charge.[1]

**{21} IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**MEGAN P. DUFFY, Judge**

---

[1]Defendant also argues that her counsel's failure to object to the testimony about the content of Archibeque's affidavit amounts to ineffective assistance of counsel. Because we reverse and remand for a new trial on other grounds, the remedy Defendant would be entitled to if counsel's assistance was ineffective, we do not address this claim. *See State v. Castillo*, 2023-NMCA-063, ¶ 37, 535 P.3d 697.