885 P.2d 648

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Charles Allen MOTES, Defendant–**
**Appellant.**

No. 21941.

Supreme Court of New Mexico.

Oct. 27, 1994.

Tom Udall, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for appellee.

Sammy J. Quintana, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for appellant.

*OPINION*

BACA, Chief Justice.

Defendant–Appellant Charles Allen Motes ("Appellant") appeals from his conviction of first-degree murder under NMSA 1978, Section 30–2–1(A)(1) (Repl.Pamp.1994).[1] The conviction stems from the murder of his ex-wife, Stella Motes, on June 27, 1993. The trial court sentenced Appellant to life imprisonment for first-degree murder. On appeal we address one issue: Whether there was sufficient evidence to support a finding of deliberate intent, and therefore, a conviction of first-degree murder. We review this case pursuant to SCRA 1986, 12–102(A)(2) (Repl. Pamp.1992), and affirm.

## I.

The following facts were adduced at trial. Appellant and the victim, Stella Motes ("Motes"), were divorced in March 1993 after being married approximately thirty-two years. Motes, who initiated the divorce, moved to Levelland, Texas in early June 1993 to live with her daughter, Stella Anne Melton. Appellant lived in Eunice, New Mexico. On Saturday June 26, 1993, Motes traveled to Eunice to spend the night with Appellant and accompany him the following day to Mexico to have dental work done. Before Motes arrived, Appellant instructed his son, Charles Lee Motes, who lived with him, not to come home that night and to sleep elsewhere. Charles Lee drove by Appellant's house at 9:00 p.m. and saw his mother's car parked on the street. At approximately midnight Appellant telephoned Stella Anne to say Motes left with her bags to Arizona with a "lady trucker." At 5:30 the next morning Appellant's next door neighbor, John Lawson, noticed Appellant walking around his (Appellant's) backyard. Lawson said there had been a trench in Appellant's backyard for about three months, and he saw Appellant use a backhoe tractor to cover it. When Charles Lee arrived at Appellant's home that morning, Appellant said Motes had telephoned from a truckstop in Arizona.

Another of Appellant's daughters, Sue Anne Heady, testified that two weeks prior to her mother's killing she was at her parent's house when they were sorting out possessions from their marriage. It had been a very tense day between the couple, and Appellant told her, "I should have put her [Motes] in the hole," gesturing to the trench in his backyard. Sue Anne testified that she became suspicious after Appellant told her that Motes left for Arizona. On Sunday afternoon, June 27, 1993, Sue Anne went to Appellant's house where she and Charles Lee used the backhoe to uncover the trench and discovered their mother's body. They immediately called the police. Appellant was arrested two days later in Loving, New Mexico, and charged with first-degree murder.

Motes's body was found almost eight feet below the surface of the ground. A plastic trash bag covered the head. Motes's purse containing her social security card, driver's license, her cigarette case, and other personal effects was found in the trench. A can of Polar brand starting fluid was also found in the trench.

Dr. Michael Ward, who performed the autopsy on Motes's body, testified that there were significant amounts of an ether-like compound in Motes's breathing passages. He also testified the plastic bag contained traces of ether and that Polar brand starting fluid contains the same type of ether found in the body. The only physical injuries he found on the body were postmortem, inflicted when the body was excavated by the backhoe. He estimated that Motes had been dead twelve to eighteen hours before she was found. Ward testified the cause of death was a combination of chemical and mechanical asphyxiation. He testified Motes was probably rendered unconscious with an ether-like compound and then buried alive. The weight of more than six feet of dirt prevented her from breathing, and she suffocated without regaining consciousness.

After the State presented its case at trial, Appellant moved for directed verdict, arguing that there was insufficient proof that he killed his ex-wife. Although the motion was denied, Appellant rested without presenting evidence. Appellant was convicted of first-degree murder. Appellant appeals from that conviction.

## II.

On appeal we address whether there was sufficient evidence to convict Appellant of deliberate-intent murder. Appellant argues that the State's evidence was insufficient to prove beyond a reasonable doubt that he acted with "deliberate intent" in causing Motes's death. *See Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979) (due process requires each element of crime be established beyond a reasonable doubt); *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). We hold there was sufficient evidence to prove beyond a reasonable doubt that Appellant acted with "deliberate intent" in causing Motes's death.

Appellant argues that the State's evidence of deliberate intent related primarily to the passage of enough time to allow Appellant to form deliberate intent, and that evidence alone was insufficient for a first-degree murder conviction. Additionally, Appellant argues the evidence of his acts following the killing were insufficient to prove that he acted with deliberate intent. Appellant relies almost exclusively on *State v. Garcia*, 114 N.M. 269, 837 P.2d 862 (1992). In *Garcia* this Court held evidence that only shows an opportunity to form deliberate intent or evidence of actions to conceal identity after a killing is insufficient to prove deliberate intent. *Id.* at 275, 837 P.2d at 868. Indeed, the burden is on the State to prove that a defendant not only had an opportunity to form deliberate intent but did in fact form a deliberate intent to kill. *Id.* In the case at bar the State met that burden.

"In reviewing the sufficiency of the evidence to establish that defendant acted with deliberate intent, we inquire whether substantial evidence, either direct or circumstantial in nature, exists to support a verdict of guilty beyond a reasonable doubt." *State v. Vigil*, 110 N.M. 254, 255, 794 P.2d 728, 729 (1990). In applying this standard, an appellate "court must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319. " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Garcia*, 114 N.M. at 274, 837 P.2d at 867 (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789). Further, application of this standard "does not involve substituting the appellate court's judgment for that of the jury in deciding the reasonable-doubt question" but instead requires "appellate court scrutiny of the evidence and the jury's *fact-finding* function to ensure that, indeed, a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *Id.*

The evidence against Appellant is largely circumstantial. We have held, however, that circumstantial evidence is sufficient to uphold a first-degree murder conviction. *See State v. Duran*, 107 N.M. 603, 605, 762 P.2d 890, 892 (1988) (in first-degree murder case, "evidence supporting conviction was circumstantial does not mean it was not substantial evidence").

" 'Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence.' " *Vigil*, 110 N.M. at 255, 794 P.2d at 729 (quoting *State v. Sparks*, 102 N.M. 317, 320, 694 P.2d 1382, 1385 (Ct.App.1985)). When viewed as a whole, the facts surrounding Motes's death is replete with evidence that demonstrates that Appellant acted with deliberate intent. The evidence indicates that, just two weeks before Motes's body was found buried in a trench in Appellant's backyard, Appellant told Sue Anne that he "should have put her [Motes] in the hole," gesturing to the trash trench in his backyard. Expecting his ex-wife to arrive at his house that evening, Appellant instructed his son Charles Lee not to come home and to find another place to sleep. At approximately midnight Appellant called one of his daughters and said that Motes had gone to Arizona with a "lady trucker." The next day Appellant told Charles Lee that Motes had called from Arizona where she was having breakfast with a lady trucker. Appellant told a neighbor that she had arrived the night before only to leave again. Appellant concocted reasons for Motes leaving her car with him—she left in someone else's car. To further support his fabrication that Motes left with her personal effects, Appellant buried them with the body, out of sight.

Even more telling, however, is the method by which Motes was killed. There was no evidence or any physical markings on the body to indicate she struggled with, or was bound by, her killer before death. The evidence indicates the killing was over an extended period of time: Around midnight, an ether-like substance was sprayed into a plastic bag; the bag was placed over Motes's head, rendering her unconscious but still alive; sometime during early morning Motes

was placed in an eight-foot deep trench, still alive; later, Motes was covered with six feet of dirt so that she would inevitably asphyxiate under its weight. It is important to note that even if Appellant had not intended to kill his ex-wife before he rendered her unconscious, he may have formed the intent just prior to placing her in the trench and burying her, as is evidenced by the fact she was buried alive. However, this determination was for the jury. *See Garcia*, 114 N.M. at 274, 837 P.2d at 867.

Moreover, there was evidence Appellant possessed the means to render Motes unconscious. One witness testified seeing a can of Polar brand starting fluid in Appellant's truck before the killing. The evidence indicated Polar brand starting fluid contains the type of ether-like compound found in Motes's body. Further, the evidence indicated a can of Polar brand starting fluid was found buried with the body.

It is uncontroverted by Appellant that he had sufficient motive to kill his ex-wife. There was evidence Appellant was distraught about the breakup of a lengthy marriage. There was also evidence that after a tense day of dividing marital property with Motes, Appellant expressed his bitterness to Sue Anne by saying he should have put Motes in the trench in the backyard.

Each component of evidence, viewed alone, may not be enough to conclude that Appellant acted with the requisite state of mind. However, viewed as a whole, the evidence is overwhelming. As such, the verdict was not based on the mere perception that Appellant only had an opportunity to form deliberate intent. Instead, the verdict was based on evidence that Appellant in fact carefully and deliberately planned, executed, and concealed a most heinous deed. The judgment of the trial court is hereby affirmed.

**IT IS SO ORDERED.**

RANSOM and MONTGOMERY, JJ., concur.