2008-NMSC-051

192 P.3d 1192

**STATE of New Mexico, Plaintiff–
Petitioner,**

v.

**Juan Antonio SILVA, Defendant–
Respondent.**

No. 30,555.

Supreme Court of New Mexico.

Aug. 20, 2008.

Gary K. King, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Caren Ilene Friedman, Santa Fe, NM, Kennedy & Han, P.C., Paul J. Kennedy, Albuquerque, NM, for Respondent.

## OPINION

SERNA, Justice.

{1} Defendant Juan Silva was convicted of second degree murder, conspiracy to commit second degree murder, and tampering with evidence. He appealed, and the Court of Appeals remanded for a new trial on the grounds that the district court had violated his Sixth Amendment rights by not allowing defense counsel to inquire into whether a State witness had been promised immunity in exchange for his testimony. The Court also found insufficient evidence to support the tampering conviction and ordered the charge dismissed on remand. The State pe- titioned this Court to review both issues. We reverse the Sixth Amendment holding and affirm dismissal of the tampering charge.

## I. INTRODUCTION

{2} Defendant's convictions stem from the August 30, 2001, murder of Mario Hernan- dez. Defendant was tried along with two codefendants, each of whom had separate counsel. The facts surrounding Hernandez's murder and the development of the State's case against Defendant are given in the Court of Appeals' opinion. *See State v. Sil- va,* 2007–NMCA–117, ¶¶ 2–5, 142 N.M. 686, 168 P.3d 1110. Rather than restating those details, we discuss, as necessary, only those portions of the record relevant to our review.

## II. THE SIXTH AMENDMENT ISSUE

{3} We begin with the facts related to Defendant's Sixth Amendment claim. The State's star witness, Bobby Salas (Salas), was the closest thing it had to an eyewitness. His testimony occurred over three days, filled approximately three volumes of tran- script, and was rife with inconsistencies. One of those inconsistencies provides the fount for Defendant's claim that he was un- able to fully confront Salas on cross-examina- tion.

{4} Prior to trial, Salas testified under oath at a deposition about his acquisition of the photographs that he later used to identify the defendants. At trial, he told a different story about those photos. In response, the State asked Salas a series of questions dur- ing direct examination aimed at establishing which of those renditions was true. Antici- pating that Salas was about to testify that he had previously lied under oath concerning the photos, defense counsel objected. The objection focused on Salas's Fifth Amend- ment right against self-incrimination and as- serted that, before Salas answered the State's questions, he should be provided with a lawyer who could advise him whether he should testify to the truth or falsity of his prior sworn statements. The State respond- ed, in open court and in front of Salas, that it did not plan to prosecute him for perjury and would not do so even if he testified to having previously lied under oath. The State then

suggested, again in front of Salas, that the trial court could give him use immunity to insulate him from any future perjury prosecution. The trial court took a recess to consider the issue.

{5} Upon its return, the trial court heard further argument on the issue. Each of the three defense lawyers joined in this discussion, variously asserting their reasons as to why Salas's Fifth Amendment rights demanded that he consult with a lawyer before answering the State's questions. The State, on the other hand, argued that Salas had not perjured himself, that the trial court could grant him use immunity, and that the State would not later prosecute him for perjury. Ultimately, the trial court decided against immunity and against requiring Salas to consult with an attorney. Instead, it admonished Salas that he was to testify truthfully and that he could be prosecuted for perjury if he failed to do so.

{6} Salas's testimony resumed. At the conclusion of his direct examination, the State asked him whether he had been promised anything in exchange for his testimony, to which Salas responded, "No." Before beginning cross-examination, defense counsel asked to approach and argued at the bench that the State had opened the door to cross-examining Salas on the State's non-prosecution promise made earlier during the discussion of his Fifth Amendment rights. The State responded that such questions should not be allowed because the trial court had not given Salas immunity. At one point, defense counsel stated, "[W]e have to be able to vigorously cross-examine about untrue statements under oath," to which the trial court responded, "I ruled that." Asked to clarify its ruling, the trial court explained:

> Well, I think that the key here is whether—I mean, he obviously came in without the promise to testify. I think that the key here is whether—if the State promised him something to come in, I think that's a little different. I see a difference. I wouldn't allow going into that particular area that the State offered him immunity to testify, and it wouldn't be true. They may have offered it, but the Court didn't grant it, so I think that area is still out of

bounds. Any inconsistent statements are in bounds.

Nowhere during this exchange did defense counsel claim a Confrontation Clause problem or protest the trial court's ruling on either general constitutional or Sixth Amendment grounds.

{7} Defendant seemingly amalgamates those two exchanges between the court and the lawyers into a single colloquy and argues that, somewhere within that rather nebulous construction, defense counsel raised the Sixth Amendment issue. When questioned at oral argument as to where, precisely, that issue was raised, Defendant admitted that the initial issue was Salas's Fifth Amendment rights but that it later "morph[ed] indirectly" into an issue of Silva's Sixth Amendment rights. Defendant pointed to the trial court's ruling that defense counsel could not ask about the promise of immunity. According to Defendant, the record shows that the trial court was aware of the Sixth Amendment issue and knew that it was ruling on the issue when it purposefully excluded defense counsel's inquiry into the State's promise not to prosecute Salas for perjury.

{8} The State, however, construes the events quite differently, parsing what Defendant interprets as a single conversation into two distinct colloquies and arguing that nowhere did defense counsel alert the mind of the trial court to an alleged Sixth Amendment violation. According to the State, the first colloquy was about Salas's Fifth Amendment rights, while the second sought an evidentiary ruling on the scope of cross examination. Therefore, the State argues, Defendant did not preserve the Sixth Amendment argument for review.

## A. Defendant Did Not Preserve the Sixth Amendment Issue

 {9} We agree with the State that defense counsel did not alert the trial court to the Sixth Amendment issue that Defendant now claims. "To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked...." Rule 12–216(A) NMRA. We require that a party assert the basis for its objection "with sufficient specificity to alert

818

the mind of the trial court to the claimed error or errors." *State v. Varela*, 1999–NMSC–045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (quoted authority omitted). Where an objection is made without the specificity necessary to call the trial court's attention to the matter complained of, the matter will be deemed unpreserved and ineligible for review. *See Hill v. Burnworth*, 85 N.M. 615, 616, 514 P.2d 1312, 1313 (Ct.App.1973).

{10} Defense counsel's objection during Salas's direct examination addressed solely Salas's Fifth Amendment rights; it did not raise, and thus did not preserve, the Sixth Amendment claim that Defendant now argues. Likewise, defense counsel's inquiry into the scope of cross-examination did not preserve the issue. Defense counsel asked the trial court to rule whether the State had opened the door to questions about promises that may have been made to Salas in exchange for his testimony. Counsel did not argue that refusing the opportunity to ask questions about the non-prosecution promise would violate Defendant's constitutional rights generally, nor did counsel take the more desirable approach and argue specifically that Defendant's Sixth Amendment or Confrontation Clause rights would be infringed. The record shows that the trial court treated defense counsel's inquiry as a request for clarification on the scope of cross-examination. *See State v. Lucero*, 104 N.M. 587, 591, 725 P.2d 266, 270 (Ct.App.1986) (concluding that confrontation issue was not preserved because defendant's objection asked merely for an evidentiary ruling and did not alert the trial court to a constitutional error). Thus, if defense counsel meant to characterize his objections as a Sixth Amendment issue at trial, it was not done with sufficient specificity to call the trial court's attention to the matter complained of, and therefore was not preserved as such. *See State v. Mora*, 1997–NMSC–060, ¶ 47 n. 1, 124 N.M. 346, 950 P.2d 789 (holding that defendant's failure to object on confrontation grounds or general constitutional grounds resulted in abandonment of Confrontation Clause argument on appeal).

**B. The Trial Court did not Commit Fundamental Error**

{11} Defendant also argues that, even if his Sixth Amendment claim was not preserved, we should consider it under the fundamental error exception to the preservation rule because it involves his fundamental rights. *See* Rule 12–216(B)(2) ("This rule shall not preclude the appellate court from considering ... questions involving ... fundamental error or fundamental rights of a party."). The first step in reviewing for fundamental error is to determine whether an error occurred. *Campos v. Bravo*, 2007–NMSC–021, ¶ 8, 141 N.M. 801, 161 P.3d 846. If that question is answered affirmatively, we then consider whether the error was fundamental. *Id.*

{12} As to the existence of error, the Court of Appeals correctly held that the trial court erred in preventing defense counsel from inquiring into the possibility of an agreement between Salas and the State. *Silva*, 2007–NMCA–117, ¶ 20, 142 N.M. 686, 168 P.3d 1110. "A defendant's right to cross-examine witnesses concerning bias or motivation to fabricate favorable testimony does not hinge on whether *in fact* any such deals or understandings were effected." *State v. Martinez*, 1996–NMCA–109, ¶ 17, 122 N.M. 476, 927 P.2d 31 (quoted authority omitted). Instead, as we have explained before, rather than the existence of an actual understanding, the "determinative factor in the Court's analysis" is that "[a] jury ... should be able to take into consideration whether a witness *hoped* to curry favor by cooperating with the prosecution." *State v. Gonzales*, 1999–NMSC–033, ¶ 24, 128 N.M. 44, 989 P.2d 419 (alteration in original) (quoting *Martinez*, 1996–NMCA–109, ¶ 17, 122 N.M. 476, 927 P.2d 31). Therefore, even in the absence of evidence that a deal had been made or could have been made exchanging Salas's testimony for leniency, defense counsel was entitled to explore the potential that Salas had been offered immunity for his testimony so that the jury, when judging his credibility, could consider whether Salas was testifying with the hope of gaining the State's favor. *Martinez*, 1996–NMCA–109, ¶ 17, 122 N.M. 476, 927 P.2d 31.

{13} Having identified an error in the trial court's ruling, we must now determine whether it was fundamental. *Campos*, 2007–NMSC–021, ¶ 8, 141 N.M. 801, 161 P.3d 846. We exercise our discretion to employ the fundamental error exception "very guardedly," *State v. Garcia*, 19 N.M. 414, 421, 143 P. 1012, 1015 (1914), and apply it "only under extraordinary circumstances to prevent the miscarriage of justice," *State v. Maestas*, 2007–NMSC–001, ¶ 8, 140 N.M. 836, 149 P.3d 933. Accordingly, we will use the doctrine to reverse a conviction only "if the defendant's guilt is so questionable that upholding a conviction would shock the conscience, or where, notwithstanding the apparent culpability of the defendant, substantial justice has not been served. Substantial justice has not been served when a fundamental unfairness within the system has undermined judicial integrity." *Campos*, 2007–NMSC–021, ¶ 18, 141 N.M. 801, 161 P.3d 846.

{14} Upon reviewing the record in the instant case, we cannot say that Defendant is indisputably innocent. *See, e.g., Garcia*, 19 N.M. at 418, 422, 143 P. at 1013, 1015 (stating that the evidence conclusively established the defendant's innocence because he was unconscious at the time of the murder for which he was charged). Thus, our inquiry turns to an analysis of whether the trial court's limitation of cross-examination resulted in a fundamental unfairness that undermined the integrity of our judicial system. *See State v. Barber*, 2004–NMSC–019, ¶ 16, 135 N.M. 621, 92 P.3d 633. To resolve that question, we view the trial court's ruling "in the context of the individual facts and circumstances of the case," as determined from our review of the entire record. *State v. Sutphin*, 2007–NMSC–045, ¶ 19, 142 N.M. 191, 164 P.3d 72 (quoted authority omitted).

{15} We start by recognizing that the loss of the fundamental right to cross-examine is not necessarily fundamental error. *State v. Rogers*, 80 N.M. 230, 232, 453 P.2d 593, 595 (Ct.App.1969). Although the trial court in the instant case prevented defense counsel from asking Salas whether he had received immunity in exchange for his testimony, it allowed defense counsel wide latitude in cross-examining Salas on his inconsistent statements and any prior untrue statements he made under oath. This is not a case in which the defendant's right to cross-examine was entirely vitiated. *See Chambers v. Mississippi*, 410 U.S. 284, 294, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (holding that the defendant was denied a fair trial because, among other things, a procedural rule prevented him from cross-examining a witness who had earlier confessed to the underlying crime). On the contrary, defense counsel had ample opportunity to cross-examine Salas and did so effectively—practically decimating his credibility as a witness. Had the trial court's ruling been a more complete restriction and denied defense counsel the breadth that it enjoyed on cross-examination, we would be more inclined to conclude that the ruling resulted in a fundamental unfairness. However, "[a] defendant's right to confront and to cross-examine is not absolute." *State v. Stephen F.*, 2008–NMSC–037, ¶ 6, 144 N.M. 360, 188 P.3d 84 (quoted authority omitted). Viewing the trial court's ruling among the facts and circumstances of this case, we cannot say that merely disallowing counsel the opportunity to inquire into the possibility of an agreement between Salas and the State worked such a fundamental unfairness in Defendant's trial that it impugned the integrity of our judicial system. Thus, the trial court's limitation of cross-examination did not rise to the level of fundamental error.

{16} For those reasons, we reverse the Court of Appeals' conclusion that the Sixth Amendment issue was eligible for review and the holding that it reached after considering the merits. Defendant is not entitled to a new trial.

## III. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE TAMPERING CONVICTION

{17} The State also challenges the Court of Appeals' holding that there was insufficient evidence to support Defendant's conviction for tampering with evidence, contrary to NMSA 1978, Section 30–22–5(A) (1963, prior to amendments through 2003). "The test for sufficiency of the evidence is whether substantial evidence of either a di-

rect or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006–NMSC–035, ¶5, 140 N.M. 94, 140 P.3d 515 (quoted authority omitted). The State alleges that Defendant tampered with evidence because (1) Defendant had a gun at the scene of the crime; (2) a gun was used to murder Hernandez; (3) the murder weapon was removed from the scene; and (4) the murder weapon was never recovered. The jury was instructed that, to prove Defendant guilty of tampering with evidence, the State had to show that he "hid a handgun" and that he did so "intend[ing] to prevent the apprehension, prosecution or conviction of himself." *See* UJI 14–2241 NMRA; *accord* § 30–22–5(A).

{18} Tampering with evidence is a specific intent crime, requiring sufficient evidence from which the jury can infer that the defendant acted with an intent to prevent "apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." Section 30–22–5(A); *accord Duran*, 2006–NMSC–035, ¶14, 140 N.M. 94, 140 P.3d 515. As we have previously explained, "[i]ntent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." *State v. Motes*, 118 N.M. 727, 729, 885 P.2d 648, 650 (1994) (quoted authority omitted). Thus, when direct evidence of an intent to disrupt the investigation is lacking, it is often inferred from an overt act of the defendant. *Duran*, 2006–NMSC–035, ¶14, 140 N.M. 94, 140 P.3d 515; *see also State v. Roybal*, 115 N.M. 27, 33–34, 846 P.2d 333, 339–40 (Ct.App.1992). For example, in a case involving death by gunshot to the head, evidence that the defendant gave a gun to his brother shortly after the killing, instructed his brother to hold it, and then lied to the police about his knowledge of the gun's whereabouts was sufficient evidence of an overt act from which the jury could infer his intent to tamper with evidence. *State v. Arellano*, 91 N.M. 195, 197, 572 P.2d 223, 225 (Ct.App.1977). However, absent both direct evidence of a defendant's specific intent to tamper and evidence of an overt act from which the jury may infer such intent, the evidence cannot support a tampering convic-

tion. *Duran*, 2006–NMSC–035, ¶15, 140 N.M. 94, 140 P.3d 515.

{19} Such is the case here. The State alleges that Defendant's possession of a gun and the police's inability to find the gun used in the murder constitutes sufficient evidence of Defendant's tampering. However, the State offered no direct evidence to show that Defendant intended to disrupt the police investigation, nor did it provide any evidence, circumstantial or otherwise, of an overt act on Defendant's part from which the jury could infer such intent. Instead, the State effectively asked the jury to "speculate that an overt act of ... hiding [the murder weapon] had taken place, based solely on the fact that such evidence was never found." *Id.* Therefore, the State failed to meet its burden and the evidence is insufficient to support Defendant's conviction for tampering with evidence.

{20} The State alternatively argues that Defendant's conviction should stand based on a theory of accessory liability. The jury was instructed that it could find Defendant "guilty of [tampering with evidence] even though he himself did not do the acts constituting the crime, if ... [t]he defendant intended that the crime be committed; ... [t]he crime was committed; [and] ... [t]he defendant helped, encouraged or caused the crime to be committed." *See* UJI 14–2822 NMRA; *accord* NMSA 1978, § 30–1–13 (1972). To convict Defendant as an accessory, the State still had to prove that someone hid the gun intending to disrupt the investigation and that Defendant helped, encouraged, or caused that to occur. *See State v. Johnson*, 2004–NMSC–029, ¶¶52, 54, 136 N.M. 348, 98 P.3d 998. However, as with Defendant, the record lacks sufficient evidence to establish that someone else acted with such intent, let alone evidence to show that Defendant helped, encouraged, or caused them to so act. Because the State did not provide such evidence, Defendant could not have been found guilty as an accessory to tampering as a matter of law.

{21} Thus, we agree with the Court of Appeals that there was insufficient evidence to support the tampering conviction.

## IV. CONCLUSION

{22} Based on the forgoing analysis, we reverse the Court of Appeals' holding that Defendant's Sixth Amendment rights were violated and uphold his convictions for second degree murder and conspiracy to commit second degree murder. However, we affirm the Court of Appeals' conclusion that there was insufficient evidence to support the tampering conviction and remand to the trial court to vacate accordingly.

{23} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PETRA JIMENEZ MAES, RICHARD C. BOSSON, and CHARLES W. DANIELS, Justices.